IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VASILE GEORGE HUSTI,          )
                              )
          Petitioner,         )          Civil Action No. 14 CV 2843
                              )
     v.                       )          Hon. Charles R. Norgle
                              )
UNITED STATES OF AMERICA,     )
                              )
          Respondent.         )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Petitioner Vasile George Husti's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the motion is denied.

## I. BACKGROUND

Petitioner Vasile George Husti ("Husti") was born in Romania and is a Green Card

holder, i.e., he has been granted authorization to live and work in the United States on a

permanent basis. Husti attended high school in the United States; he speaks both Romanian and

English. Husti is now twenty-three-years old. On July 8, 2010, a grand jury returned an

indictment charging Husti, along with twelve others, with conspiring to steal, purloin, and

knowingly convert to their own use and the use of another money of the United States, in

violation of 18 U.S.C. § 641, of conspiring to defraud the United States by impeding, impairing,

obstructing and defeating the lawful government functions of the Internal Revenue Service of the

Department of Treasury, in violation of 18 U.S.C. § 371 (Count One), as well as with stealing,

purloining, and knowingly converting to his own use and the use of another money belonging to

the United States, in violation of 18 U.S.C. §§ 641 and 642 (Count Thirteen). On September 25,

2012, Husti pleaded guilty pursuant to a written plea agreement as to Count Thirteen of the indictment for his role in submitting fraudulent claims for income-tax returns. Following the change of plea hearing, judgment of guilty was entered on the plea. On February 13, 2013, the Court sentenced Husti to 366 days' imprisonment.

On direct appeal, Husti, an alien, likely to be removed from the United States, argued that the Court erred by failing to discuss his request for a lower sentence based on his potential removal from the United States. <u>United States v. Stanciu</u>, 546 F. App'x 589, 589 (7th Cir. 2013) (non-precedential order). The Seventh Circuit rejected this argument for two reasons: first because the Court did discuss Husti's alienage and stated that it was irrelevant to the sentence imposed, and second because it has previously held in <u>United States v. Ramirez-Fuentes</u>, 703 F.3d 1038, 1047-49 (7th Cir. 2013), that this "stock" argument may be rejected even without discussion. <u>Id.</u> Husti also argued that his attorney rendered ineffective assistance during the sentencing hearing by arguing that the Court lacked the authority to adjust his sentence to prevent his automatic removal. <u>Id.</u> The Seventh Circuit held that Husti's ineffective assistance of counsel argument was "doomed by inability to show prejudice." <u>Id.</u> at 590. Specifically, the Seventh Circuit found that the following evidence demonstrated the lack of prejudice:

> (a) counsel recognized his mistake and corrected it; (b) an Assistant United States Attorney informed the judge that he had the power to adjust the sentence in a way that could influence immigration consequences; (c) the judge stated that he knew that he had this power; (d) the judge said that he was unwilling to take defendants' immigration status into account, one way or the other, when shaping the sentence; and (e) Husti's sentence of 366 days is six months below the lower bound of the applicable Guideline range, implying that counsel achieved an excellent result for his client.

<u>Id.</u> Husti now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). This relief is available only in limited circumstances, such as where an error of law is jurisdictional, of constitutional magnitude, or "constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted). The Court reviews the evidence and draws all reasonable inferences therefrom in the light most favorable to the government. Messinger v. United States, 872 F.2d 217, 219 (7th Cir. 1989) (citations omitted).

A defendant "faces an uphill battle" where, as here, he has already "presented a claim of ineffective assistance of counsel to the court of appeals unsuccessfully." United States v. Taglia, 922 F.2d 413, 418 (7th Cir. 1991). The law of the case bars the Court from reexamining a ruling by a court of appeals "unless there is some good reason for reexamining it such as an intervening change in law, or new evidence." Id. (internal quotation marks and citations omitted).

### B. Ineffective Assistance of Counsel

Having failed on his ineffective assistance of counsel argument on appeal, Husti now advances a different theory of ineffective assistance in his § 2255 motion, seeking to vacate his judgment of conviction and guilty plea. Husti asserts that his attorney rendered ineffective assistance by providing him with "false assurances that his conviction would not result in his automatic removal from this country." 28 U.S.C. § 2255 Mot. to Vacate J. & Plea Based on Ineffective Assistance of Counsel ¶ 20 [hereinafter § 2255 Mot.]. Husti claims that he signed the

plea agreement "because Mr. Goodman told me that was the only way that I would stay in the country with my family." Id. Ex. A, ¶ 15.[1]

To prevail on his ineffective assistance of counsel claim, Husti must establish both: (1) that his counsel's performance was objectively deficient; and (2) that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 691-92, 700 (1984). In assessing counsel's performance, the Court's review is "highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (internal quotation marks and citation omitted). Additionally, "[t]o establish prejudice in the plea context, the defendant must demonstrate through objective evidence that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (additional citations omitted).

With respect to the first prong, the Supreme Court has held that "counsel must inform [his] client whether his plea carries a risk of deportation." Padilla v. Kentucky, 559 U.S. 356, 374 (2010). Here, the record belies Husti's claim that his decision to plead guilty was based on his attorney's alleged affirmative misrepresentation that he will not be removed from the United States. For example, on January 5, 2012, Husti's attorney filed a motion for additional discovery which states, *inter alia*, that

> [A]ttorneys for Husti met with the attorneys for the government to discuss a possible plea bargain for Husti . . . . [A]nd urged the government to consider a plea deal which would not cause Husti to be deported and separated from his family. A plea to a felony theft charge involving more than $10,000 would be considered an "aggravated felony" which would be a deportable offense.
> . . . .

---

[1] Exhibit A, attached to the instant motion merely states, "The following statement is true and accurate to the best of my knowledge. I am making this statement freely and voluntarily." § 2255 Mot., Ex. A. This statement is not signed by Husti under the penalty of perjury and verified as true and correct. See 28 U.S.C. § 1746.

4

. . . Husti only has a green card, not full citizenship, and has a real fear that a conviction could result in deportation.

Def. George Husti's Mot. for Additional Discovery at 2-3, United States v. Husti, No. 10 CR 261-3 (N.D. Ill. Jan. 5, 2012), ECF No. 182. Additionally, Husti's plea agreement—that both he and his attorney signed—contains a specific paragraph explaining the possible immigration consequences of the guilty plea:

> Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Depending on the sentence imposed in this case, the offense to which defendant is pleading guilty may qualify as an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43). More specifically, if the Court imposes a term of imprisonment of one year or more, the offense to which defendant is pleading guilty will be an "aggravated felony," in which case removal is presumptively mandatory. Moreover, even if the Court imposes a term of imprisonment of less than one year, the crime to which defendant is pleading guilty is a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

Plea Agreement at 17-18, ¶ 24, United States v. Husti, No. 10 CR 261-3 (N.D. Ill. Sept. 25, 2012), ECF No. 258 (emphasis added).

During the change of plea hearing, Husti, under oath, stated that he had read the terms of the plea agreement and had discussed them with his attorney. Husti stated that he had talked to his attorney on approximately twenty-five occasions, at which time his attorney explained all of the consequences of the case. Further, the Court advised Husti that if he entered a plea of guilty in the case and if a judgment of conviction is entered against him there was a "possibility or the probability" that he might be required to leave the United States. Transcript of Proceedings at 3,

¶¶ 1-5, Husti, No. 10 CR 261-3 (N.D. Ill. Sept. 25, 2012). This admonition did not end the matter, however. The plea colloquy continued as follows:

> THE COURT: What is your present status in the United States?
> TH DEFENDANT: I got a Green Card.
> THE COURT: All right. As your lawyers no doubt have told you, a judgment of conviction in this case might result in your being removed from the United States. Do you understand that?
> THE DEFENDANT: Yes, I do.
> THE COURT: All right. Have you discussed this with your attorneys?
> THE DEFENDANT: Yes.
> THE COURT: And have they fully advised you regarding this?
> THE DEFENDANT: Yes.

Id. ¶¶ 11-24. During the course of the plea colloquy, Husti affirmed that he had decided to plead guilty and that he was pleading guilty voluntary—his decision was not the result of any threats, promises, or coercion.

Facing removal proceedings, Husti now claims that he is not guilty of knowingly stealing money, that he always wanted to go to trial, that he did not understand the consequences of signing the plea agreement, and that the only reason he signed the plea agreement was because his attorney told him that if he signed the agreement he would be able to stay in the United States with his family. § 2255 Mot., Ex. A, ¶¶ 9-12. "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." United States v. Peterson, 414 F.3d 825, 827 (7th Cir. 2005) (citations omitted). Husti's proffered reason for the contradiction—that he was confused during the sentencing hearing "and did not really understand what was going on in court," § 2255 Mot., Ex. A, ¶ 13—is unsupported by the record.

Husti argues, as proof of his confusion, that in response to the Court's question "Have you decided to withdraw your plea of not guilty and enter a plea of guilty?" he responded with

"No." Transcript of Proceedings at 17, ¶¶ 7-9, Husti, No. 10 CR 261-3 (N.D. Ill. Sept. 25, 2012).

This argument is disingenuous. The plea colloquy continues:

> THE COURT: Let me ask you again: Have you decided to withdraw your plea of not guilty, which means to take it back, and to enter a plea of guilty?
> THE DEFENDANT: Yes.
> THE COURT: Are you pleading guilty?
> THE DEFENDANT: Yes.
> THE COURT: Are you pleading guilty based upon the terms of this written plea agreement?
> THE DEFENDANT: Yes.
> THE COURT: And you say you've read it?
> THE DEFENDANT: Yes.
> THE COURT: Did you have an opportunity to discuss all of it with your attorneys?
> THE DEFENDANT: Yes, I did.
> THE COURT: Did you ask them questions?
> THE DEFENDANT: Yes.
> THE COURT: Did they give you answers?
> THE DEFENDANT: Yes.
> THE COURT: Are you pleading guilty voluntarily?
> THE DEFENDANT: Yes.
> THE COURT: Are you being pushed or shoved or squeezed into pleading guilty?
> THE DEFENDANT: No.
> THE COURT: Are you pleading guilty because you did what the plea agreement says you did?
> THE DEFENDANT: Yes.
> THE COURT: Do you have any questions on anything that I have said?
> THE DEFENDANT: No.
> THE COURT: Have you understood everything?
> THE DEFENDANT: Yes.

Id. at 17, ¶¶ 10-25 & 18, ¶¶ 1-15. Husti was provided with ample opportunities to speak, but never explained that any promises had been made to induce his guilty plea, or that he needed more time to think about his decision to plead guilty. Moreover, when he was confused at one point during the plea colloquy he explicitly stated that he did not understand. Id. at 14, ¶ 25 & 15, ¶¶ 1-2 ('THE COURT: "Were you before the Magistrate Judge at some point? THE DEFENDANT: I don't understand that."). Husti was informed by the Court of the potential immigration consequences, and stated that he had discussed the immigration issues with his

7

attorney and was fully advised on the matter. With knowledge of the risk of deportation, Husti chose to enter a plea of guilty. Husti does not present a compelling explanation for the contradiction he now asserts.

Aside from the extensive evidence outlined above, Husti's sentencing memorandum also acknowledges his risk of deportation: "For the first time in his young life Mr. Husti realized that he could lose not only his freedom, but that he could be deported and lose his family and the life they worked so hard to give him here in the United States as well." Def. Husti's Sentencing Mem. & Objections to the Presentence Investigation Report at 2, No. 10 CR 261-3 (N.D. Ill. Feb. 7, 2013), ECF No. 315. The record is clear that Husti's attorney did not provide him with a false assurance that his conviction would not result in his removal from the United States. Husti therefore cannot establish that his attorney's performance was constitutionally deficient. Thus, his claim must fail. Gant v. United States, 627 F.3d 677, 682 (7th Cir. 2010) ("A failure to establish either deficienc[y] or prejudice is fatal to Gant's claim." (citing Eddmonds v. Peters, 93 F.3d 1307, 1313 (7th Cir. 1996))); see also Groves v. United States, 755 F.3d 588, 591 (7th Cir. 2014) ("If Groves is unable to make a sufficient showing of one of the Strickland prongs, we need not consider the other." (citations omitted)). Husti's § 2255 motion is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Husti's § 2255 motion is denied. Because Husti cannot make a substantial showing of the denial of a constitutional right, the Court denies a Certificate of Appealability.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 8, 2014